[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14503

Non-Argument Calendar

_____

TRAVIS HORNE,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-22108-CMA

_____

Before ROSENBAUM, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Travis Horne appeals the district court's order denying his motion to vacate his conviction for possession of a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c), based on the trial court's error in instructing the jury that it could convict him based on any of three predicate offenses, one of which—Hobbs Act robbery—was invalid. He asserts the district court erred in applying harmless error review to his claim of *Stromberg*[1] error and the district court erred by finding that such error was harmless. He also contends the district court abused its discretion by inviting and then granting the Government's motion for reconsideration of the court's prior order that granted Horne's motion to vacate, because the Government's arguments in its motion for reconsideration were or could have been litigated in deciding his motion to vacate in the first instance. After review,[2] we affirm.

---

[1] *Stromberg v. California*, 283 U.S. 359 (1931).

[2] When reviewing a district court's denial of a § 2255 motion, we normally review questions of law *de novo* and factual findings for clear error. *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004). We review a district court's decision to grant a motion for reconsideration for abuse of discretion. *Region 8 Forest Servs. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805-06 (11th Cir. 1993).

## I.  RELEVANT BACKGROUND[3]

In August 2004, in a second superseding indictment, Horne was charged along with a number of codefendants with several felony counts.  Horne was charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count 1); Hobbs Act conspiracy (Count 2); conspiracy to possess a firearm in furtherance of a crime of violence and drug trafficking crime, specifically Hobbs Act robbery, carjacking and conspiracy to possess with intent to distribute a controlled substance (Count 3); carjacking (Count 7); possession of a firearm in furtherance of a crime of violence, specifically carjacking (Count 8); Hobbs Act robbery (Count 12); and possession of a firearm in furtherance of a crime of violence, specifically Hobbs Act robbery (Count 13).  As to Count 8, the second superseding indictment charged Horne as follows:

> On or about November 28, 1998, in Miami-Dade County, in the Southern District of Florida, the defendant, Travis Horne, did knowingly use and carry a firearm during and in relation to a crime of violence, which is a felony prosecutable in a court of the United States, that is, a violation of Title 18, United States Code, Section 2119(1), as set forth in Count 7 of this Superseding Indictment; all in violation of Title 18, United States Code, Sections 924(c)(1) and 2.

---

[3] We recount certain relevant facts as they relate to Horne's § 924(c) conviction (Count 8).

Horne proceeded to trial, where the Government introduced testimony showing that he and his codefendants committed a series of violent crimes from 1997 to 1999—"including a number of armed robberies and home invasions, allegedly perpetrated to raise enough money to purchase a large quantity of drugs in order to open and operate a drug hole—an apartment where they would break the drugs up into smaller quantities and sell it at a profit." See United States v. Brown, 227 F. App'x 795, 797 (11th Cir. 2007).

One of Horne's co-conspirators, Andre Gardner, testified he had stolen a car with Horne and a friend called "Mook," in November 1998. Gardner, Horne, and Mook were driving together when they saw a pink Chevrolet with gold rims and two passengers pass by. They followed the car to a convenience store, where they saw the car's passenger go into the store, while the driver remained in the car. Horne, carrying a gun, and Gardner got out of their car. Horne walked up to the car and fired the gun into the driver's side window. The driver fled through the passenger side door and then Gardner and Horne took the car.

During closing arguments, the Government described the carjacking detailed above (Count 7) and the possession of a firearm in furtherance of a crime of violence (Count 8) together, telling the jury that both counts related to the November 1998 carjacking. Likewise, in closing, Horne's counsel described both counts as "relate[d] to the same thing," specifically, the November 1998 carjacking. The district court instructed the jury that, with respect to

Count 8, it could find Horne guilty only if it found that the Government proved, beyond a reasonable doubt, that Horne "committed a crime of violence charged in Counts 2, 7, or 12 of the Superseding Indictment, or the drug trafficking crime charged in Count 1 of the Superseding Indictment." The court also explained:

> It is charged, in other words, that [Horne] violated the law in two separate ways. It is not necessary, however, for the Government to prove that [Horne] violated the law in both of those ways. It is sufficient if the Government proves, beyond a reasonable doubt, that [Horne] knowingly violated the law in *either* way, but, in that event, you must unanimously agree upon the way in which [Horne] committed the violation.

The jury returned a general verdict finding Horne guilty as to Counts 1, 2, 3, 7, and 8, and not guilty as to Counts 12 and 13. It also returned a supplemental verdict form making specific findings as to Counts 1, 2, and 7. As to Counts 1 and 2, the jury found Horne possessed a dangerous weapon or that such a possession was within the scope of the conspiracy reasonably foreseeable to him. As to Count 7, the jury expressly found "a firearm [was] possessed, brandished, or discharged, during the commission of the offense."

## II. PREDICATE OFFENSE

Section 924(c) provides:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any

6                    Opinion of the Court                    20-14503

other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

(i) be sentenced to a term of imprisonment of not less than 5 years . . . .

18 U.S.C. § 924(c)(1)(A).

Under § 924(c)(3), a "crime of violence" means a felony offense that (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or (B) "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."   18 U.S.C. § 924(c)(3)(A), (B).  We have referred to § 924(c)(3)(A) as the "elements clause" and to § 924(c)(3)(B) as the "residual clause." *United States v. Davis*, 139 S. Ct. 2319, 2323-24 (2019).  In *Davis*, the Supreme Court held § 924(c)(3)(B)'s residual clause was unconstitutionally vague. *Id.* at 2336.

Horne's Hobbs Act conspiracy conviction in Count 2 cannot act as a predicate for his § 924(c) offense. *See id.*; *Brown v. United States*, 942 F.3d 1069, 1075-76 (11th Cir. 2019) (holding  conspiracy to commit Hobbs Act robbery did not qualify as a crime of violence under the elements clause).  Horne bears the burden of proving the

likelihood the jury based its § 924(c) verdict solely on the conspiracy to commit Hobbs Act robbery and not another valid predicate offense identified in the indictment. *See In re Cannon*, 931 F.3d 1236, 1243 (11th Cir. 2019) (citing *Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017)).

In *Stromberg*, the Supreme Court held that where a jury returns a general verdict which may have been based on any of several grounds, one of which is constitutionally invalid, and it is "impossible to say" on which ground the jury rested its verdict, "the conviction cannot be upheld." 283 U.S. at 367-68. In *Hedgpeth v. Pulido*, 129 S. Ct. 530 (2008), the Supreme Court held such "instructional error[s] arising in the context of multiple theories of guilt" are subject to harmless error review, like most instructional errors. *Id.* at 60-61.

In *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021), decided after the district court denied Horne's motion, we held the harmless-error standard mandates that collateral relief is proper only if the court has "grave doubt" about whether a trial error had "substantial and injurious effect or influence" in determining the verdict. *Id.* at 1292 (quoting *Davis v. Ayala*, 576 U.S. 257, 267-68 (2015)). We noted while *Stromberg* stands for "the principle that, where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground," a *Stromberg* error is nonetheless subject to the harmless-error standard. *Granda, Id.* at 1293-94. Under this standard, we explained, a petitioner must

show more than a reasonable possibility that the error was harmful, and it would grant relief "only if the error 'resulted in actual prejudice'" to the petitioner. *Id.* at 1294 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). We further rejected the argument the court must apply the categorical approach to a § 924(c) conviction to presume that conviction rested on an invalid predicate. *Id.* at 1295.

The district court did not err in concluding any *Stromberg* error was harmless because the record does not provoke grave doubt about whether Horne's § 924(c) conviction rested on an invalid ground. *See id.* at 1292. As the district court noted, the jury, by special verdict, found that a gun was possessed in furtherance of the carjacking charged in the same indictment. This finding was supported by testimony at trial showing Horne used a firearm to shoot into a car during the November 1998 carjacking underlying Count 7. Moreover, in closing, both the Government and Horne's counsel told the jury that Counts 7 and 8 were both based on Horne's role in the November 1998 carjacking. Likewise, the superseding indictment, in Count 8, listed that carjacking as the sole predicate offense. The only doubt as to the basis of Horne's § 924(c) conviction arose from the district court's jury instructions, but weighed against the indictment, the jury's special verdict, and the closing arguments of both sides, it does not promote "grave

doubt" sufficient to justify vacatur of Horne's § 924(c) conviction. Accordingly, as to this issue, we affirm.[4]

## III.  RECONSIDERATION

A court may grant relief from a final judgment, order, or proceeding, for, among other things, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment. This prohibition includes new arguments that were previously available but not pressed." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (quotation marks and citations omitted).  However, the word "mistake" encompasses errors of law by the district court. *Oliver v. Home Indem. Co.*, 470 F.2d 329, 330-31 (5th Cir. 1972).[5]  A district court may initiate reconsideration of such a judgment or order *sua sponte*, at least before any party takes appeal. *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962) (stating "[o]verburdened

---

[4] The Government contends the district court erred in determining that Horne showed both cause and prejudice sufficient to overcome any procedural default on his challenge to his § 924(c) conviction.  Because we conclude Horne's claim fails on the merits, we need not address this issue. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020), *cert. denied sub nom. Dallas v. Raybon*, 142 S. Ct. 124 (2021).

[5] In *Bonner v. City of Prichard*, 551 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

courts, trial and appellate, should not have to squander precious time and resources . . . where the Judge on his own and in time faces up to the error and corrects it by effective action").

The district court did not abuse its discretion in inviting the Government to move for reconsideration. Horne focuses his argument on the fact the Government, in its motion for reconsideration, raised only arguments it made during the initial disposition of his motion to vacate or arguments which were available to it at that stage. Although a party may not use a motion under Rule 60(b) to relitigate issues already raised or which could have been raised in the first instance, this Court's predecessor held the district court, realizing an error in its judgment before any party has taken appeal, can correct a legal error in its prior order through the vehicle of Rule 60(b). Although the Government's motion would arguably be improper absent the invitation of the district court, the court itself was within its discretion to invite that motion upon realizing it had possibly erred in its prior order, rather than requiring the Government to appeal to this Court to correct an error the district court had already recognized. Accordingly, as to this issue, we affirm.

AFFIRMED.